[No. G012672. Fourth Dist., Div. Three. Jan. 13, 1994.]

MDFC LOAN CORPORATION, Plaintiff and Appellant, v.
GREENBRIER PLAZA PARTNERS et al., Defendants and Respondents.

## COUNSEL

Cadwalader, Wickersham & Taft, John E. McDermott, John C. Kirkland and Theresa J. Macellaro for Plaintiff and Appellant.

McKittrick, Jackson, DeMarco & Peckenpaugh, James R. DeMarco, George S. Burns, Gordon & Wolf, Peter J. Marshall and Finkle, Hersh, Stoll & Collett for Defendants and Respondents.

## OPINION

**MOORE, J.**—Plaintiff MDFC Loan Corporation appeals from that portion of an order terminating a receivership directing the receiver to disburse the remaining funds in his possession to defendant Greenbrier Plaza Partners. These funds represent income received from commercial real property after Greenbrier defaulted on the underlying debt and plaintiff had a receiver appointed to assume control of the property. Plaintiff contends it has a perfected interest in the monies via an assignment of rents, and contrary to defendants' claim, the proscriptions against deficiency judgments do not bar its recovery of the funds.

## FACTS

Greenbrier is a general partnership consisting of the Doan Trust and E & G Associates. In July 1988, plaintiff loaned Greenbrier $9.5 million to purchase a commercial office building known as Greenbrier Plaza.

As security for the loan, plaintiff received an assignment of leases, a $1.8 million standby letter of credit and a recorded deed of trust containing an assignment of rents. Paragraph 1.18 of the trust deed provided: "Trustor hereby absolutely and unconditionally assigns and transfers to Beneficiary all the income . . . of the Property, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such income . . . . Trustor irrevocably appoints Beneficiary its true and lawful attorney at the option of Beneficiary at any time to demand, receive, and enforce payment, to give receipts, releases, and satisfactions and to sue, either in the name of Trustor or in the name of Beneficiary, for all such income, . . . and apply the same to the indebtedness secured hereby. . . ." But under paragraph 1.19, "Notwithstanding anything to the contrary . . . , so long as no default by Trustor in the payment of any indebtedness secured hereby . . . shall exist and be continuing, Trustor shall have the right to collect all income . . . from the Property and to retain, use and enjoy the same."

Greenbrier defaulted on the loan. In December 1990, plaintiff recorded a notice of default and election to sell under the deed of trust. Shortly thereafter, plaintiff also filed an action for judicial foreclosure and specific performance, seeking appointment of a receiver to assume control of the property and to collect rents and profits from it. On February 19, 1991, the trial court issued an order granting plaintiff's request for appointment of a receiver conditioned upon the receiver taking the required oath and filing a $1,000 bond.

The next day, defendant Doan Trust filed an involuntary chapter 11 petition placing Greenbrier in bankruptcy. While the bankruptcy was pending, the receiver appointed in this action executed the oath and posted the required bond. Plaintiff moved to dismiss the bankruptcy proceeding, and on October 10 its request was granted. Thereafter, the receiver took control of the property and operated it. Defendants concede that during the pendency of the bankruptcy Greenbrier collected $328,528.07 in rent from the property. However, when the receiver took over management of the property, Greenbrier refused to transfer this income to him.

Greenbrier and the Doan Trust filed suit against plaintiff and Commonwealth Land Title Company, the trustee under the deed of trust. E & G

Associates and its general partners also filed a related action against plaintiff, Greenbrier and the Doan Trust. In their lawsuit, Greenbrier and the Doan Trust obtained a temporary restraining order enjoining a nonjudicial foreclosure sale of the property. One condition of the temporary restraining order required Greenbrier to deposit with the clerk of the court all funds held by the partnership. Greenbrier deposited $328,528.07 with the clerk. Subsequently, the funds were transferred to the receiver by stipulation of the parties.

After a hearing, the trial court dissolved the temporary restraining order and denied the application for a preliminary injunction. A nonjudicial foreclosure sale was held December 10. The trustee's deed upon sale stated the outstanding indebtedness was $11,736,713.02. Plaintiff purchased the property for $7.6 million.

The receiver moved to terminate the receivership. At that time, the funds in the receiver's possession amounted to $413,554.85. The parties filed conflicting requests for the income received from the property. In part, defendants argued plaintiff was not entitled to the funds because it made a full credit bid for the property at the foreclosure sale. In a supporting declaration, Charles T. Collett, the attorney representing E & G Associates, stated:" I attended a private foreclosure sale conducted on behalf of MDFC Loan Corporation . . . in respect to the foreclosure by MDFC under the Deed of Trust that is the subject of this action . . . . Also present at the trustee sale, were Theresa J. Macellaro, attorney for MDFC Loan Corporation and Kevin Jepsen acting on behalf of the trustee . . . . [¶] . . . At the trustee sale, Mr. Jepsen described the property being auctioned . . . . Mr. Jepsen stated that the total indebtedness under the Deed of Trust was in the sum of $7,600,000.00. Mr. Jepsen then called for opening bids, and after further consultation with Ms. Macellaro, Mr. Jepsen stated that an opening bid had been made by MDFC Loan Corporation in the sum of $7,600,000.00. No higher bids were made . . . ."

The trial court terminated the receivership and ordered all of the remaining funds disbursed to Greenbrier. The trial judge explained his ruling as follows: "[T]he funds were . . . prior profits and rents and I disagree[ ] [with] the literal interpretation of . . . Civil Code section 2938. . . ."

## DISCUSSION

### I. *Civil Code Section 2938*[1]

■ Plaintiff contends the trust deed securing Greenbrier's loan contained an absolute assignment of the property's income, and under section

---

[1]All statutory references are to the Civil Code unless otherwise specified.

2938, it is entitled to the property's income received after the receiver was appointed. Since the funds at issue constitute income from Greenbrier Plaza, the trial court erred by awarding those funds to Greenbrier.

The interpretation of section 2938 presents a question of law. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247.) We are not bound by the trial court's interpretation of the statute. Furthermore, plaintiff's appeal only challenges the portion of the trial court's order directing the receiver to disburse the funds in his possession to Greenbrier. Thus, defendants' reliance on cases holding the trial court's establishment, termination and administration of a receivership is subject to an abuse of discretion standard is inapposite.

Subdivision (a) of section 2938 provides, "A written assignment of interest in rents, issues, and profits of real property made in connection with a loan secured by real property, stating that it is absolute, shall be deemed to constitute a *present transfer* of the assignor's interest in existing and future rents, issues, and profits of that real property effective upon the execution and delivery of the assignment by the assignor." (Italics added.) Subdivision (b) permits an absolute assignment to be recorded "in the same manner as any other conveyance of an interest in real property," and once recorded, "(1) the assignment shall be deemed to give constructive notice of the content and effect of the assignment with the same force and effect as any other duly recorded conveyance of an interest in real property, and (2) the *interest granted by the assignment shall be deemed perfected as of the date of recordation*, notwithstanding any provision of the assignment or of any other provision of law that would otherwise preclude or defer enforcement of the rights granted the assignee under the assignment until the occurrence of a subsequent event, including, but not limited to, a subsequent default of the assignor." (Italics added.)

Paragraph 1.18 of the trust deed states Greenbrier "absolutely and unconditionally assigns and transfers to Beneficiary all the income, . . . of the Property, . . . and hereby gives to and confers upon Beneficiary the right, power and authority to collect such income . . . ." The trust deed was recorded in July 1988 when the parties entered into the loan transaction. Consequently, plaintiff obtained a perfected interest in these funds at that time.

Defendants argue section 2938 "merely establishes the relative priority of third party liens on the borrower's property, and does not grant the lender any additional rights against the borrower." We do not agree. When the

Legislature enacted section 2938, the chaptered bill contained an uncodified section stating the statute's provisions are "declaratory of existing law." (Stats. 1991, ch. 501, § 2.)

The Supreme Court has long recognized that a debtor and creditor could agree in advance a perfected assignment of real property income will arise in the event of a default in the repayment of the underlying debt. In *Kinnison v. Guaranty Liquidating Corp.* (1941) 18 Cal.2d 256 [115 P.2d 450], Pacific Mutual loaned money to Bartlett Corporation secured by a trust deed on its real property. Bartlett defaulted on repaying the loan. Pacific Mutual and Bartlett executed another agreement whereby Bartlett assigned to Pacific Mutual all income from the property. Defendant, a judgment creditor of Bartlett's, levied a writ of execution on the bank account in which Bartlett deposited the property's rental proceeds. Plaintiff, the assignee of Pacific Mutual, sued defendant to recover the funds constituting property income. (*Id.* at pp. 258-259.)

The trial court awarded the funds to plaintiff and the Supreme Court affirmed. In dictum the Supreme Court noted, "Where the mortgage or deed of trust contains a clause which merely includes the rents as a portion of the property pledged to secure the debt, courts have generally held that the mortgagee acquires only a security interest and has no more right to the rents than he has to the real property. In such circumstances it is well settled that the mortgagee must actually acquire possession of the mortgaged property by consent or lawful procedure or must secure the appointment of a receiver in order to perfect his claim to the rents. [Citations.] The agreement between the parties, however, either by a clause inserted in the deed of trust or mortgage or by a separate instrument, may provide that in the event of default the rents are assigned absolutely to the mortgagee. It has been held that such a provision, rather than pledging the rents as additional security, operates to transfer to the mortgagee the mortgagor's right to the rentals upon the happening of the specified condition. . . . Our decisions have indicated . . . that the parties to a mortgage or deed of trust may contract respecting the right to rentals and that such agreements will be enforced in accordance with the expressed intention of the parties." (*Kinnison v. Guaranty Liquidating Corp., supra,* 18 Cal.2d at pp. 261-262.)

The same result was reached in a bankruptcy context in *In re Ventura-Louise Properties* (9th Cir. 1974) 490 F.2d 1141. Applying California law, the Ninth Circuit Court of Appeals held the beneficiary under a deed of trust containing an absolute assignment of rents clause was entitled to rents received from the debtor's real property over the objection of the debtor's bankruptcy trustee. (*Id.* at pp. 1143-1144.) Also, a recent article on the effect

of section 2938 explained the statute's purpose as follows: "[T]he stated legislative purpose behind . . . § 2938 . . . is to prevent a creditor's right to rents from being cut off by a bankruptcy filing. . . . Therefore, one can argue, based on the legislative history, that the term 'perfection' must be construed to mean that possession or other actions (beyond recordation of the assignment) are *not* required for a creditor to be able to enforce an absolute assignment of rents." (Reynolds, *New Look at Secured Creditors' Rights to Rents and Profits: Is the Pendulum Swinging Back?* (Cont.Ed.Bar 1992) 15 Real Prop. L. Rep. 257, 262; see also Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar Supp. 1993) § 5.10, p. 52.)

Defendants claim that under plaintiff's interpretation of section 2938 a creditor could seize the property's income from the inception of the loan. But paragraph 1.19 of the trust deed allowed Greenbrier to retain the property's income so long as it was not in default. Thus, under the terms of the parties' agreement the earliest date plaintiff could demand it receive the property's income was when Greenbrier fell into default. The default leading to this litigation occurred well before the funds at issue were acquired by Greenbrier. Furthermore, plaintiff is only seeking the income received after the receiver's appointment.

Defendants cite the recent decision in *In re GOCO Realty Fund I* (Bankr.N.D.Cal. 1993) 151 Bankr. 241, for the proposition an absolute assignment of rents does not entitle the creditor to receive the property's income prior to the time the creditor or a receiver takes possession of the property. This decision does not support defendants' claim. In *GOCO*, a creditor with an absolute assignment of rents sought to recover funds it claimed constituted income from the property that the debtor paid to several law firms as retainer fees after it defaulted on the underlying debt. (*Id.* at p. 244.) The bankruptcy court recognized that under section 2938 the creditor had perfected its interest in the funds, but denied its request because the creditor failed to enforce the interest by making a demand for the property's income before the debtor transferred the funds to the law firms. (151 Bankr. at pp. 246-250.) Here, plaintiff attempted to enforce its perfected interest in the property's income by seeking appointment of a receiver to manage the property. Furthermore, defendants have never claimed, either in the lower court or on appeal, that plaintiff failed to timely demand the rents and profits from the property. Consequently, defendants' reliance on *GOCO* is without merit.

Paragraphs 1.18 and 1.19 of the trust deed provided for an absolute assignment of rents contingent upon the occurrence of a default. Once Greenbrier defaulted on the loan, a perfected transfer of the property's

income arose in favor of plaintiff, and it sought to enforce the transfer by filing this action and seeking the appointment of the receiver. Thus, plaintiff is entitled to all of the funds held by the receiver when the receivership was terminated.

## II. *Effect of the Anti-deficiency Judgment Laws*

■ Defendants also contend plaintiff is barred from recovering the income received after Greenbrier defaulted on the underlying debt because it would violate the prohibition against recovering a deficiency judgment and because plaintiff made a full credit bid for the property during the nonjudicial foreclosure sale.

(3) Code of Civil Procedure section 580d provides, "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." This statute effectively limits the right to obtain a deficiency judgment to cases where a creditor employs the remedy of judicial foreclosure, thereby giving the debtor the opportunity to exercise the right of redemption. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97]; *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40, 43 [71 Cal.Rptr. 64].)

■ However, this statute does not preclude plaintiff from exhausting other security after a nonjudicial foreclosure sale. In *Mortgage Guarantee Co.* v. *Sampsell* (1942) 51 Cal.App.2d 180 [124 P.2d 353], plaintiff sold real property receiving a chattel mortgage and trust deed securing the loan used to purchase property. The mortgage and trust deed each contained an assignment of rents provision. The debtor defaulted. Plaintiff had a receiver appointed to collect the rents and foreclosed under both the chattel mortgage and trust deed. A deficiency remained and plaintiff obtained an order transferring to it the rents collected by the receiver. (*Id.* at pp. 181-183.) The Court of Appeal affirmed, rejecting a claim the transfer of the property's rents to plaintiff violated Code of Civil Procedure section 580b which bars a deficiency judgment after sale under certain purchase money mortgages and deeds of trust.[2] "There can be no question but that the assignment of rentals in the deed of trust constituted additional primary security with the real

---

[2]The underlying debt involved in this case was a purchase money loan. However, Code of Civil Procedure section 580b only applies to two-party transactions where the seller takes back a deed of trust or mortgage securing a note for all or part of the purchase price, or where a third party makes a loan secured by a deed of trust or mortgage "on a dwelling for not more

property described in the deed of trust and the personal property described in the chattel mortgage. [Citation.] But even if these rentals did not constitute additional security, the action brought for them was not an action to obtain the money judgment mentioned in section 580a, nor was the order of the court requiring them to be paid to the respondent a deficiency judgment in the sense in which it is used in section 580b. Therefore, in no event would the sale under the deed of trust of the real property therein described, prevent the creditor from proceeding to foreclose his chattel mortgage and to obtain the rentals which in the deed of trust were assigned to him for security." (51 Cal.App.2d at p. 186.) In *Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463], the Supreme Court discussed the holding in *Mortgage Guarantee Co.*, and noted in dictum that, "By analogy the same rule would apply to section 580d . . . ." (*Id.* at p. 466.)

This case involves a multiple security situation. Plaintiff received not only the deed of trust with the assignment of rents, but also a standby letter of credit and an assignment of the property's leases. Thus, transfer of the rental proceeds to plaintiff did not constitute a deficiency judgment under Code of Civil Procedure section 580d.

Defendants attempt to distinguish *Mortgage Guarantee* on the ground the rents at issue in that case were collected by the receiver after acquiring possession of the property. Here, the rents at issue were collected by Greenbrier and were transferred to the receiver only by a stipulation that expressly reserved the issue of which party was entitled to receive the rents. This analysis ignores the effect of section 2938. By including an absolute assignment of rents clause in the trust deed and recording that instrument, plaintiff obtained a present and perfected transfer of the property's income effective on Greenbrier's default.

Furthermore, limiting the rule of *Mortgage Guarantee* to cases where a receiver has already been appointed and taken possession of the debtor's property would be bad public policy. The trial court appointed the receiver in February 1991. The bankruptcy proceeding barred the receiver from assuming control of the property until that matter was dismissed nearly eight months later. A large portion of the monies at issue in this case were received during the pendency of the bankruptcy. It would be inequitable to allow a debtor to avoid its obligations under the deed of trust by merely

than four families given to a lender . . . to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser." This case concerns a third party purchase money loan to acquire commercial property. Thus, section 580b does not apply here. (*Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263 [78 Cal.Rptr. 170, 455 P.2d 106]; 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 166, p. 665.)

filing a bankruptcy petition itself or allowing the same to be done by another party with an interest in achieving the same result.

Alternatively, defendants contend plaintiff is barred from receiving the rents accumulated during the bankruptcy proceeding because it made a full credit bid for the property at the nonjudicial foreclosure sale. ■ "Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. [Citations.] In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property [citations], net rent proceeds [citation], or damages for waste [citation]." (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 606-607 [125 Cal.Rptr. 557, 542 P.2d 981].)

■ Relying on the Collett declaration, defendants argue substantial evidence supports a finding plaintiff made a full credit bid at the foreclosure sale. Plaintiff concedes the trustee's agent made the statement concerning the amount of the outstanding indebtedness, but asserts it was erroneous and cite to the trustee's deed upon sale which states, "The amount of the unpaid debt was $11,736,713.02." Plaintiff contends there is no authority that an oral statement by a trustee's agent at a private foreclosure sale can unilaterally reduce the amount of the debt owed. The procedure for conducting a private nonjudicial foreclosure sale under a trust deed's power of sale clause is governed by Civil Code sections 2924g and 2924h. Neither statute requires the trustee to announce the total amount of the indebtedness. The trustee's deed clearly states the total indebtedness exceeded $11 million.

Defendants cite cases they claim support the proposition Collett's declaration is substantial evidence plaintiff made a full credit bid. None of these cases supports their position. *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590 involved the effect of a full credit bid, but not the sufficiency of the evidence to establish if a full credit bid had been made. There the supporting declaration merely incorporated the trustee's deed upon sale which showed the purchaser at the foreclosure sale made a full credit bid. (*Id.* at p. 595.) In *Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1 [224 Cal.Rptr. 301], the issue was whether a trustee's sale had occurred. The trustee's own declaration supported a finding there was a sale. (*Id.* at p. 4.) *Eastland S. & L. Assn.* v. *Thornhill & Bruce, Inc.* (1968) 260 Cal.App.2d 259 [66 Cal.Rptr. 901] also did not involve the question whether a full credit bid had been made.

Plaintiff also notes the trial judge's explanation for his ruling was that he disagreed with its interpretation of section 2938. The trial court made no

reference to or express finding on the issue of whether plaintiff made a full credit bid. Furthermore, at plaintiff's request, we have taken judicial notice of rulings made by the trial court in this litigation subsequent to the filing of this appeal. In the lawsuit filed by E & G Associates, the trial court granted plaintiff's motion for summary judgment, in part, holding the trustee conducted a proper foreclosure sale. In support of this ruling the trial judge found that at the time of the sale the amount owed to plaintiff exceeded $11 million, the recorded notice of sale accurately stated the total indebtedness, the trustee's inadvertent misstatement of the amount owed during the foreclosure sale did not result in a reduction of the indebtedness and plaintiff's $7.6 million bid did not constitute a full credit bid.[3] Under these circumstances, we conclude the record fails to support defendants' claim plaintiff made a full credit bid at the foreclosure sale.

## DISPOSITION

The judgment is reversed and the matter remanded to the superior court with directions to order disbursement of the remaining funds held by the receiver to plaintiff. Plaintiff shall recover its costs on appeal.

Sills, P. J., and Crosby, J., concurred.

---

[3]Citing the recent decision in *Western Security Bank* v. *Superior Court* (1993) 21 Cal.App.4th 156 [25 Cal.Rptr.2d 908], and a pending appeal from the judgment filed in the E & G Associates' action, Greenbrier requests we vacate the submission in this appeal and delay issuance of our decision until the appeal in the E & G Associates' action is decided. Greenbrier claims the decision in *Western Security Bank* applies to this case. We disagree. In *Western Security Bank* v. *Superior Court, supra,* a divided panel held that, in light of Code of Civil Procedure section 580d's underlying public policy, a party who issued standby letters of credit to real property debtors as additional security for their lender could decline to honor the letters where the issuer learned the letters were to be used to discharge a deficiency existing after the lender had nonjudicially foreclosed on the property. (21 Cal.App.4th at p. 164.) But even the majority in *Western Security Bank* conluded no conflict with section 580d arises where a real property lender draws on a letter of credit *before* nonjudicially foreclosing on the property. (21 Cal.App.4th at p. 178, fn. 11) Here, that is exactly what occurred. Plaintiff demanded payment under the standby letter of credit on July 11, 1991. The nonjudicial foreclosure sale did not occur until December 10, nearly five months later. Thus, Greenbriers's request to delay resolution of this appeal is denied.