**UNITED STATES of America, Plaintiff,**

v.

**REDEVELOPMENT AGENCY OF the CITY OF OAKLAND, Defendant.**

**No. C–95–1100 WHO.**

United States District Court,
N.D. California.

Aug. 16, 1995.

Michael Yamaguchi, United States Attorney, Jay R. Weill, Assistant United States Attorney, San Francisco, CA, for Plaintiff.

Steven M. Morger, Wendel, Rosen, Black & Dean, Oakland, CA, for Defendant.

## OPINION AND ORDER

ORRICK, District Judge.

The United States of America (the "government") brought this action seeking to recover certain funds belonging to taxpayer Raymond Castor ("Castor") but now in the possession of defendant Redevelopment Agency of the City of Oakland (the "Agency"). The funds at issue are rents collected by a receiver on real property owned by Castor before it was purchased by the Agency on June 10, 1993. The Internal Revenue Service ("IRS") served levies on both the receiver and the Agency for the funds that were not honored.

The Agency brought a motion to dismiss and motion for summary judgment on the grounds that the government cannot demonstrate any entitlement to the rents that are the subject of this action. The government brought a cross-motion for partial summary judgment on its claim that the Internal Revenue Service ("IRS") perfected its lien before the Agency. For the reasons hereinafter stated, the Agency's motions are denied, and the government's motion is granted.

### I.

Castor owned real property located on Alice Street in the City of Oakland, County of Alameda. On August 5, 1986, Castor entered into a twenty-year written lease of this property with the City of Oakland (the "City"). Under the terms of this lease, the City was to pay Castor $15,847 monthly rent through June 1, 2006, at which time, upon delivery of one more payment of $15,847 on July 1, 2006, and the satisfaction of certain other conditions, the City would acquire title to the property.

On July 20, 1987, Great American First Savings Bank ("Great American") entered into a loan agreement with Castor in which it loaned him $1.3 million in return for which he

gave Great American a deed of trust on the property. The deed of trust was recorded on August 5, 1987. It contained an assignment of rents provision. On or about August 9, 1991, Great American was taken over by the Resolution Trust Corporation ("RTC").

Castor failed to pay taxes due to the government, and on October 21, 1991, the government recorded its notice of federal tax lien.[1] On November 22, 1991, the RTC filed a complaint for judicial foreclosure of trust deed and for appointment of a receiver against Castor in the Superior Court for the County of Alameda ("Superior Court") for Castor's refusal to make mortgage payments. In paragraph 11 of the complaint, the RTC claimed it was entitled to the appointment of a receiver to take possession of the real property and to collect the rents. It made no attempt to collect the rents before the receiver was appointed.

On December 9, 1991, the Superior Court appointed Susan Uecker, Receiver for the property and authorized her to take possession of the leases and collect the rents. The Receiver managed the property and collected the rents under the City of Oakland lease between December 9, 1991, and October 1993. On June 10, 1993, the Trustee, California General Mortgage Service, Inc., conducted a sale of the property pursuant to the power of sale in the deed of trust. The Agency was the successful bidder at the sale and acquired the property by trustee's deed upon sale on that date. Its successful bid was $1,265,315.40; at the time of the foreclosure sale, the outstanding debt was $1,590,315.40. Thus, following foreclosure, the Agency was still owed $315,000.

On January 4, 1994, the Superior Court discharged the Receiver and ordered that the unexpended rent monies collected by the Receiver be paid over to the Agency. On January 11, 1994, pursuant to the Superior Court's order, $397,637.86 remaining from rents collected by the Receiver was paid over to the Agency. On January 28, 1994, the government served a notice of levy on the Agency for funds that the Agency had received on January 11, 1994, from the Receiver that represented the rents paid prior to June 10, 1993. The government claims that this notice of levy was not honored by the Receiver.[2]

The government claims that its lien right in the rent was perfected on October 21, 1991, when a notice of federal tax lien was filed against Castor in Alameda County. It also claims that the beneficiary of the deed of trust did not perfect its rights in the rents until the Receiver was appointed on December 9, 1991, and, thus, after the IRS had perfected its lien.

The Agency moves to dismiss the complaint on the grounds that the government cannot demonstrate any entitlement to the rents that are the subject of this action under the applicable provisions of the Internal Revenue Code ("IRC"). In the alternative, the Agency moves for summary judgment on the above-stated grounds. It claims that it had a perfected security interest under California law to all the rents from the property before the Agency purchased the property on June 10, 1993. The government opposes this motion and moves for partial summary judgment on its claim that the notice of federal tax lien filed October 21, 1991, primes the Agency's interest in the rents, which was not perfected until December 9, 1991.

## II.

### A.

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

**1.** On September 17, 1991, the IRS assessed against Castor the amount of $523,397.66 for his failure to collect, truthfully account for, and pay over employment taxes of Doctor's Hospital of Oakland for the third and fourth quarters of 1988 and for the second quarter of 1989.

**2.** The government further claims that it is not moving for summary judgment at this time on the precise amount of rents paid before June 10, 1993, and due the government. It claims that if its cross-motion for partial summary judgment is granted, it will attempt to stipulate with the Agency as to the amount of rents plus interest paid to the Receiver before June 10, 1993.

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment identify evidence that shows the absence of a genuine issue of material fact. Once the moving party has made this showing, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B.

■ The government claims that on September 17, 1991, the IRS assessed Castor for $526,397.66 of unpaid employment taxes. When Castor failed to pay these taxes, the assessment became a lien against all property and rights to the property of Castor in existence on September 17, 1991, as well as to any property or rights to property that Castor acquired thereafter. I.R.C. §§ 6321, 6322 (West 1989); *Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

■ The government's claim to the pre-sale proceeds delivered by the Receiver to the Agency is based upon its lien against Castor for unpaid taxes. The authorization for this lien is found at § 6321 of the IRC, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any inter-est, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (West 1989). A tax lien is analogous to a judgment lien and attaches to the taxpayer's property in the same way. *Citizens Nat'l Trust & Sav. Bank v. United States,* 135 F.2d 527, 528 (9th Cir.1943). Courts look to state law to determine if and to what extent the taxpayer has an interest in the property subject to a tax lien. *United States v. Creamer Indust., Inc.,* 349 F.2d 625, 628 (5th Cir.), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). When there are competing liens against the taxpayer's property, priority is normally determined on a "first in time, first in right" basis. *United States v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993).

Section 6323 of the IRC addresses conflicting liens claims to a taxpayer's property: "The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest,* mechanic's lien, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a) (West Supp.1995) (emphasis added). The notice required in subsection (f) was recorded on October 21, 1991.

On September 17, 1991, Castor was the owner of the Alice Street property in Alameda County. He also was the owner of a lease with the City of Oakland on the property and had rights against the City arising from the lease. The government alleges that its lien attached to both the real property and Castor's rights under the lease on October 21, 1991. More particularly, the government argues that the IRS lien attached to Castor's rights to rent collected under the lease prior to the Agency's purchase of the property on June 10, 1993.

The Agency alleges that the deed of trust recorded against the Alice Street property makes clear that the Agency was the holder of a *security interest* in both the real property and the rents derived therefrom at all

times relevant hereto. The IRC defines the term "security interest" as follows:

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation.... A security interest exists at any time (A) if, at such time, the property is in existence *and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation,* and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1) (Supp.1995) (emphasis added).

The Agency claims that the assignment of rents section of the deed of trust gives it a priority position under California law to all rents from the property to the extent not actually collected by the debtor or another secured creditor. The Agency states that its security interest was clearly derived by contract (*i.e.*, the deed of trust and related documents) for the purpose of securing payment of an obligation (*i.e.*, the debt reflected by the promissory note). The Agency claims that by recording the deed of trust on August 5, 1987, its interest was perfected against subsequent judgment liens. Cal.Civ. Code §§ 1214, 1215, 2897. The Agency says "money" or "money's worth" was parted with when the loan was made, and the real property and lease from which the rents were derived were in existence at the time the loan was made and security interest perfected.

The Agency also argues that it held a security interest in the lease pursuant to the recorded financing statement. This security interest, it argues, was derived by contract for the purpose of securing payment of Castor's obligation and, upon recordation, the interest was perfected against subsequent judgment liens. Money and money's worth was parted with, the leases pledged as security were in existence at the time of the pledge, and all elements to give priority to the Agency's lien over that of the government's tax lien were present. *See* 26 U.S.C. § 6323(h)(1). Pursuant to § 6323 of the

IRC, a security interest that is perfected under local law before a tax lien is recorded can defeat the priority of a tax lien.

. In this case Castor gave Great American a deed of trust on the property when the loan agreement was entered. Deeds of trust commonly contain clauses that provide for an "assignment" of the rents and profits of the mortgaged property to the lender. Randy Rogers, Note, *Assignment of Rents Clauses Under California Law and in Bankruptcy: Strategy for the Secured Creditor,* 31 Hastings L.J. 1433 (1980). "These clauses are designed to give the lender a lien upon the rents and profits in addition to its lien upon the underlying property." *Id.* at 1433–34 (footnote omitted). Assignments of rent come in various forms but basically provide an additional source of repayment and security for the underlying obligation.

■ There are three types of assignment of rent provisions entered into with respect to property in California: (1) absolute assignments; (2) absolute assignments conditional on default; and (3) assignments for security purposes (assignment of postdefault rents as further security). The difference between these three types of assignments relates to when and how the creditor obtains the right to obtain possession of the rents generated by the property. *See* Witkin, *Summary of California Law, Secured Transactions in Real Property,* §§ 87–89 (9th ed. 1987) and (Supp.1994).

■ Under an absolute assignment, the lender collects the rents and applies them to the debt. Under an absolute assignment conditional on default, the lender collects rents automatically on the happening of a specified event with no further action required. Under an assignment for security purposes, the creditor is not granted an immediate right in and to the rents but may look to the property following default by taking affirmative steps such as having a receiver appointed. *See* Bernhardt, *California Mortgage & Deed of Trust Practice 2d,* "Rents and Profits," §§ 5.11, 5.12, pp. 248–250 (1990).[3]

---

**3.** The Court notes that § 2938.1 of the California Civil Code, added in 1992, provides that assign-

ments as additional security *executed on or after*

Under § 2938 of the California Civil Code, enacted in 1991, "[a] written assignment of interest in rents, issues, and profits of real property made in connection with a loan secured by real property, *stating that it is absolute*, shall be deemed to constitute a present transfer of the assignor's interest in existing and future rents, issues, and profits of that real property effective upon the execution and delivery of the assignment by the assignor." Cal.Civ.Code § 2938(a) (Deering 1995) (emphasis added).

The government contends that the deed of trust in this case provided an assignment of rents for security purposes. The Agency contends that the deed of trust provided an absolute assignment. The deed of trust provided as follows with respect to rents from the property:

Trustor ... grants, transfers and assigns to Trustee, in trust, ... that real property ... described as:

[description of property omitted]

TOGETHER WITH ... the rents, income, issues and profits of all property covered by this deed of trust. SUBJECT, HOWEVER, to the assignment incorporated herein to Beneficiary, of such rents, income, issues and profits.

FOR THE PURPOSE OF SECURING:

1. Payment of the sum of $1,300,000 with interest thereon....

TO PROTECT THE SECURITY
OF THIS DEED OF TRUST,
TRUSTOR AGREES:

. . . . .

(14) That, upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said note or notes to Trustee for cancellation and retention, and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.... Such ... reconveyance shall operate as a reassignment of rents, issues and profits hereinafter assigned to Beneficiary....

*January 1, 1992,* are perfected by recordation

(15) That Trustor does hereby grant, transfer and assign to Beneficiary all rents, income, issues and profits due or to become due hereafter for the occupancy or use of such property, except that Trustor reserves the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, income, issues and profits as they become due and payable.

(16) That upon default by Trustor in payment of any indebtedness secured hereby or in the performance of any agreement hereunder, Beneficiary may at any time without notice, either in person, by agent, or by receiver to be appointed by the court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of such property, or any part thereof; in its own name sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid; and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees upon any indebtedness secured hereby and in such order as beneficiary may determine....

(Request for Judicial Notice in Supp. of Mot. to Dismiss Compl. or, Alternatively for Summ.J., filed Apr. 24, 1995, Ex. A (Deed of Trust and Assignment of Rents).)

The Agency states that the assignment language makes clear that the rents were absolutely assigned to the Agency's predecessor in interest upon execution of the deed of trust, with a reservation to the debtor only so long as he was not in default. The Agency argues that the language, "Trustor does hereby grant, transfer and assign" supports this interpretation. The Agency argues that because the condition attendant to the reservation lapsed upon the debtor's default in May 1991, the deed of trust assignment language makes clear that the rents, income, issues, and profits had been absolutely and conclusively granted, transferred, and assigned to the Agency before the govern-

alone. Cal.Civ.Code § 2938.1 (Deering 1995).

ment's tax lien was recorded. Therefore, it is the owner of the rents.

The government argues that paragraphs 15 and 16 of the deed provide additional security for the loan and contemplate that Castor will continue to receive the rents until there has been a default and the beneficiary takes some affirmative step to collect the rents. Thus, argues the government, the deed of trust contains an assignment as additional security, not an absolute assignment. The Agency argues that government is flawed in its contention that the rents were pledged as additional security.

The government's interpretation of the deed of trust is supported by *Malsman v. Brandler*, 230 Cal.App.2d 922, 41 Cal.Rptr. 438 (1964). In *Malsman*, plaintiffs (trust deed beneficiaries) sued to recover rents collected by the defendant property owners, after notice of default and prior to plaintiffs' demand for or taking possession of the secured property. *Id.* at 923, 41 Cal.Rptr. at 439. In September 1957, defendants purchased a ten-story building in downtown Los Angeles. The property was encumbered by a first deed of trust in favor of an insurance company and a second deed of trust in favor of plaintiffs. *Id.*

Plaintiffs argued that they were entitled to the rents upon the trustor's default without demand for or taking possession of the real property because the deed of trust contained an absolute assignment. Defendants stated that the deed of trust passed only a security interest in such rents and entitled defendants to the rents collected until possession was taken by plaintiffs through the appointment of a receiver. *Id.* at 924, 41 Cal.Rptr. at 440.

The deed of trust in question "grants, transfers and assigns" to the trustee, in trust, the real property described, "To-gether with the rents, issues and profits thereof, subject, however, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated herein by reference to collect and apply such rents, issues and profits."

*Id.*

The court in *Malsman* concluded that paragraph (10) of the deed of trust did not reflect an absolute assignment of rents to the beneficiary upon the happening or notice of default.[4] The court noted that paragraph (10) contained no language purporting to assign the rents to the beneficiary. First, the court noted that paragraph (10) begins with the words, "That as additional security...." *Id.* at 925, 41 Cal.Rptr. at 440. Second, the court noted that the provision in paragraph (10) whereby the trustor confers upon the beneficiary the power to collect the rent subject to the right of the trustor to collect and retain such rents prior to any default, discloses an intent that upon default the beneficiary · *may* exercise the right of collection. *Id.* Third, the court found that paragraph (10)'s provision that upon default the beneficiary may take possession and collect rents suggests that the beneficiary's power to collect the rents can only be exercised after the beneficiary exercises the power to take possession. *Id.*

The second and third provisions cited by the court in *Malsman* as evidence of a secured interest are present in paragraphs (15) and (16) of the deed of trust at issue in this case. The court in *Malsman* concluded that:

The provisions of paragraph (10) are entirely consistent with an intent to further pledge the rents as security and are inconsistent with a clearly expressed intention

---

4. Paragraph (10) of the deed of trust provided as follows:

"That as · additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, ... to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby ... to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, ... enter upon and take possession of said property ... in his own name sue for or otherwise collect such rents, issues and profits.... and apply the same, ... upon any indebtedness secured hereby,.... The entering upon and taking possession of said property, the collection of such rents, issues and profits ... shall *not cure or waive any* default or notice of default hereunder...."
*Malsman*, 230 Cal.App.2d at 924, 41 Cal.Rptr. at 438.

of an absolute assignment of such rents to the beneficiary effective upon the happening of a default or to the giving of notice of default.

*Id.* at 925, 41 Cal.Rptr. at 441.

The Agency attempts to distinguish *Malsman* from this case by stating that in *Malsman,* the debtor [trustor] did not grant, convey or transfer (i.e., the indices of an absolute assignment) the rents to the beneficiary, but rather gave the beneficiary the right, subject to the initiation of affirmative acts by the creditor, to collect and apply the rents to the debt. This attempt to distinguish *Malsman* falls far short of the mark. Paragraph (16) of the deed of trust specifically states that upon default by the trustor, the beneficiary *may* at any time *enter upon and take possession of such property.* This is the same language found by the court in *Malsman* to be indicative of a secured interest rather than an absolute assignment.

The government also cites *Kinnison v. Guaranty Liquidating Corp.,* 18 Cal.2d 256, 261, 115 P.2d 450 (1941), in support of its argument. The *Kinnison* court said in dictum that a clause absolutely assigning the rents to the beneficiary on the occurrence of a condition such as default transfers to the beneficiary the trustor's right to the rents on the occurrence of the specified condition. *Id.* at 263, 115 P.2d at 454. In *Kinnison,* however, the court described the instrument by which the trustor transferred its right to the beneficiary as a complete transfer because there was no provision for a continued enjoyment of the rents by the debtor so long as no default existed in the obligation secured. *Id.* In this case, the Trustor retained the right to collect rents prior to any default. Therefore, the assignment does not meet the requirements described in *Kinnison* to be an absolute assignment.

The Agency claims that *MDFC Loan Corp. v. Greenbrier Plaza Partners,* 21 Cal. App.4th 1045, 26 Cal.Rptr.2d 596 (1994), supports its argument that the assignment was absolute assignment conditional on default. In *MDFC,* however, the assignment of rents provision stated that the trustor *"absolutely and unconditionally* assigns and transfers to Beneficiary all the income ... of the Proper-

ty...." *Id.* at 1048, 26 Cal.Rptr.2d at 600 (emphasis added). The assignment in this case did not contain the phrase "absolutely and unconditionally."

The word "absolute" does not appear in the deed of trust. The California Civil Code provides that the written assignment must state that it is absolute in order to be absolute. Cal.Civ.Code § 2938(a) (Deering 1995). Therefore, there is no clearly expressed intent that the rents be assigned absolutely. Furthermore, the words "to protect the security of the deed of trust" precede the assignment of rents clause in the deed of trust. This phrase suggests that the assignment of rents clause was intended to be *additional security.* Finally, the deed of trust first assigns the rights to the rents to the Trustee subject to the later assignment of the rights to the rents to the beneficiary, who, however, must take possession of the property or do some similar act in order to collect the rents.

■ The assignment of rents in the deed of trust is an assignment of rents for security purposes. An assignment of rents for security purposes must be perfected before a lender is entitled to receive the rents. To perfect this type of interest, California law requires that the lender either acquire possession of the encumbered property or obtain the appointment of a receiver to collect the rents for its benefit. *Childs v. Shelburne Realty Co.,* 23 Cal.2d 263, 268, 143 P.2d 697, 700 (1943). No perfected security interest was acquired by the trust deed beneficiary in the lease or the rents arising out of it until December 9, 1991, when the Receiver was appointed. The government perfected its lien right on October 21, 1991, when it filed the notice of federal tax lien. 26 U.S.C. § 6323(a), (f). Therefore, under the "first in time, first in right" doctrine, the government's lien is first in time and takes priority. *McDermott,* 507 U.S. at 447, 113 S.Ct. at 1526.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion for partial summary judgment on its claim that its lien takes

priority over defendant's security interest is GRANTED.

2. Defendant's motion to dismiss is DENIED.

3. Defendant's motion for summary judgment is DENIED.