[No. G045936. Fourth Dist., Div. Three. June 20, 2012.]

CADLEROCK JOINT VENTURE, L.P., Plaintiff and Appellant, v. WILLIAM N. LOBEL, Defendant and Respondent.

## COUNSEL

Verus Law Group, Holly Walker and Michael Sobkowiak for Plaintiff and Appellant.

The Lobel Firm and James E. Till for Defendant and Respondent.

## OPINION

**IKOLA, J.**—The trial court granted summary judgment to defendant William N. Lobel, reasoning that plaintiff Cadlerock Joint Venture, L.P. (Cadlerock), the assignee of a loan that had previously been secured by a junior real property lien, was barred by Code of Civil Procedure section 580d from obtaining a deficiency judgment against Lobel.[1] The senior and junior liens at issue were created contemporaneously when the loan originator structured a "piggyback" refinancing transaction, whereby Lobel executed two separate promissory notes and two accompanying deeds of trust both referencing the same real property.[2] Soon thereafter the originator assigned the smaller loan (and accompanying junior lien) to a purchaser in the secondary mortgage market. When Lobel defaulted on both loans, an assignee of the senior lien conducted a nonjudicial foreclosure, which extinguished the junior lien.

Section 580d "precludes a judgment for any loan balance left unpaid after the lender's nonjudicial foreclosure under a power of sale in a deed of trust . . . on real property." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 237 [62 Cal.Rptr.2d 243, 933 P.2d 507].) On its face, section 580d contemplates a single loan. Thus, when two separate loans are secured (via separate deeds of trust) by the same real property, section 580d does not prevent a junior creditor from obtaining a money judgment for the full amount due on the underlying junior debt obligation when the senior lienholder conducts a nonjudicial foreclosure that extinguishes the junior lienholder's security interest. (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43–44 [27 Cal.Rptr. 873, 378 P.2d 97] (*Roseleaf*); *Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611–616 [59 Cal.Rptr.2d 288] (*Graves*).) Several appellate courts have held, however, that section 580d *does* preclude a deficiency judgment when the same lender is both the senior lienholder and the junior lienholder. (See, e.g., *Simon v. Superior Court* (1992) 4 Cal.App.4th

---

[1] All statutory references are to the Code of Civil Procedure.

[2] Section 580b is inapplicable to the instant case because the loans at issue were not used as purchase money. Section 580b "prohibits all deficiency judgments" in specified real property transactions involving the provision of purchase money, regardless of whether the creditor conducts a judicial or nonjudicial foreclosure. (*In re Marriage of Oropallo* (1998) 68 Cal.App.4th 997, 1003 [80 Cal.Rptr.2d 669], italics omitted.)

63, 77 [5 Cal.Rptr.2d 428] (*Simon*).) Moreover, a single lender cannot avoid the application of section 580d under *Simon* by assigning the junior loan to a different entity *after the trustee's sale* on the senior lien. (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199 [139 Cal.Rptr.3d 562] (*Mitchell*).)

We must decide a novel question of law: When a single lender contemporaneously makes two nonpurchase money loans secured by two deeds of trust referencing a single real property and soon thereafter assigns the junior loan to a different entity, can the assignee of the junior loan, who is subsequently "sold out" by the senior lienholder's nonjudicial foreclosure sale, pursue the borrower for a money judgment in the amount of the debt owed?

Because we answer this question in the affirmative, we reverse the court's grant of summary judgment in favor of Lobel. By its plain terms, section 580d applies only to a lender seeking a "deficiency upon a note secured by a deed of trust . . . upon real property . . . in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust." As interpreted by our Supreme Court in *Roseleaf, supra*, 59 Cal.2d at page 43, section 580d "does not appear to extend to a junior lienor whose security has been sold out in a senior sale." Certain cases have found room to maneuver around *Roseleaf, supra*, 59 Cal.2d 35, based on concerns that lenders could undermine the underlying purposes of section 580d by artificially structuring loans to allow themselves to both nonjudicially foreclose on the security and obtain a deficiency judgment. (E.g., *Simon, supra*, 4 Cal.App.4th 63; *Mitchell, supra*, 204 Cal.App.4th 1199.) But it would be improper to extend this line of cases to the factual circumstances in the instant case, where the junior loan was assigned soon after origination.

## FACTS

In 2004, Lobel acquired certain real property located at 71 Anjou, Newport Beach, California (the Property). In October 2006, Lobel borrowed $878,750 from lender Sea-Breeze Financial Services, Inc. (Sea-Breeze). The money was used in part to pay off outstanding debt (approximately $600,000) secured by the Property. Lobel's transaction with Sea-Breeze consisted of two loans evidenced by two separate promissory notes and secured by two separate deeds of trust: (1) a $740,000 loan evidenced by an October 5, 2006 promissory note (senior loan) with a first deed of trust on the Property (senior lien) and (2) a $138,750 loan evidenced by an October 6, 2006 promissory note (junior loan) with a second deed of trust on the Property (junior lien).[3]

---

[3] The loan structure utilized in this transaction is referred to in the mortgage industry as a "piggyback loan."

The senior loan featured an initial interest rate of 8.5 percent; the interest rate was adjustable based on a formula fixed to the London Interbank Offered Rate. The junior loan was a fixed rate loan with an interest rate of 16 percent, with interest-only payments of $1,850 for the first 120 months of the loan.

On October 16, 2006, Sea-Breeze assigned the junior loan to Residential Funding Company, LLC. Subsequently, the junior loan was assigned to LaSalle Bank, N.A., as trustee. There is no intimation in the record that either of these assignees was affiliated with Sea-Breeze.

Lobel last made a payment on the junior loan in August 2007. Lobel has since refused to pay the overdue principal amount of $138,750 and applicable interest accruing thereon. Lobel also defaulted with regard to the senior loan (the record does not disclose when Lobel last made a payment on the senior loan).

In February 2008, Sea-Breeze assigned its interest in the senior loan/lien to Central Mortgage Company (Central). Central conducted a nonjudicial fore-closure sale on April 23, 2008. No surplus proceeds over and above the amount secured by the senior lien resulted from the sale. The junior lien was therefore extinguished on April 23, 2008.

LaSalle Bank, N.A., as trustee, assigned the junior loan/lien to Cadlerock on September 22, 2008.[4] Cadlerock filed a complaint on July 26, 2010, asserting causes of action for breach of contract, account stated, book account, money lent, and money had and received. It is undisputed that Sea-Breeze and the assignees of the junior loan, including Cadlerock, have fully performed under the terms of the junior loan. It is undisputed that Lobel is in default under the terms of the junior promissory note. It is undisputed that the outstanding balance on the junior loan as of April 12, 2011, was $220,828.33, consisting of principal ($138,750) and interest ($82,078.33).

The parties filed competing motions for summary judgment based on the undisputed facts recited above. The court denied Cadlerock's motion and granted Lobel's motion: "[Section] 580d bars an anti-deficiency recovery on [Cadlerock's] junior lien. The original lender structured the final loan with two notes. Based on the liberal construction of anti-deficiency statutes, it would be exalting form over substance to treat [Cadlerock's] loan as a 'sold out junior.' "

---

[4] Cadlerock "is engaged in the business of purchasing asset portfolios which include, but are not limited to, non-performing loans, such as the one at issue in this action." There is no suggestion in the record that Cadlerock is affiliated with any of the other entities that owned the senior and junior loans. Cadlerock does not identify the consideration it provided to obtain the junior loan, but its ability to purchase the loan at a discount based on either the legal uncertainty of being able to obtain a judgment against Lobel and/or uncertainty about the practical value of such a judgment is irrelevant to the legal issue presented.

## DISCUSSION

We review de novo the trial court's rulings on the parties' respective motions for summary judgment. The relevant facts are undisputed and relatively straightforward. Thus, we may turn our undivided attention to discerning the rule of law applicable to the facts presented.

*General Background: Real Property Security Interests and Antideficiency Laws*

██ "In the absence of a statute to the contrary, a creditor secured by a trust deed or mortgage on real property may recover the full amount of the debt upon default. He may realize the security or sue on the obligation or both; the obligation is an independent undertaking by the debtor to pay." (*Roseleaf, supra,* 59 Cal.2d at p. 38.) "California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property. Most of these statutes were enacted as a result of 'the Great Depression and the corresponding legislative abhorrence of the all too common foreclosures and forfeitures [which occurred] during that era for reasons beyond the control of the debtors.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Rothwell*).)

"Pursuant to this statutory scheme, there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. That action is foreclosure, which may be either judicial or nonjudicial." (*Rothwell, supra,* 10 Cal.4th at p. 1236; see § 726, subd. (a).) "The purpose of the [one form of action] rule is to limit a secured creditor to a single suit to enforce its security interest and collect its debt and to compel the exhaustion of all security before a monetary deficiency judgment may be obtained against the debtor." (*National Enterprises, Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1221 [115 Cal.Rptr.2d 37] (*Woods*).)

██ When the entire "value of the security has been lost *through no fault of the creditor,* the creditor may [immediately] bring a personal action on the debt" despite the one form of action rule. (*Graves, supra,* 51 Cal.App.4th at p. 611, italics added.) Such a creditor "need not go through the idle form of bringing an action for foreclosure before he can have a judgment on the note." (*Hibernia S. & L. Soc. v. Thornton* (1895) 109 Cal. 427, 429 [42 P. 447].) But this exception to the one form of action rule " 'does not apply if the beneficiary himself is responsible for the loss of security. . . .' " (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48 [57 Cal.Rptr.2d 687, 924 P.2d 996].) For instance, a creditor may not unilaterally divest its security interest without the consent of the debtor. (*Pacific Valley Bank v. Schwenke* (1987) 189

Cal.App.3d 134, 142 [234 Cal.Rptr. 298].) And a junior lienor may not ignore its security and sue on the note merely because it thinks the market value of the property is less than the value of a senior lien on the property. (*Giandeini v. Ramirez* (1936) 11 Cal.App.2d 469, 470–473 [54 P.2d 91].)

 If, after a foreclosure sale, the security is insufficient to satisfy the underlying obligation, the creditor's "right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 . . . ."[5] (*Roseleaf, supra*, 59 Cal.2d at pp. 38–39.) "Under sections 580a and 726, proceedings for a deficiency must be initiated within three months after [a foreclosure sale] and the recovery may not exceed the difference between the amount of the indebtedness and the fair market value of the property at the time of the sale." (*Roseleaf*, at p. 39.)

 Section 580d provides in relevant part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." "This statute effectively limits the right to obtain a deficiency judgment to cases where a creditor employs the remedy of judicial foreclosure . . . ." (*MDFC Loan Corp. v. Greenbrier Plaza Partners* (1994) 21 Cal.App.4th 1045, 1053 [26 Cal.Rptr.2d 596].)

"In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale. [Citation.] However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure." (*Rothwell, supra*, 10 Cal.4th at p. 1236.)

"In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust. [Citations.] Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption. [Citation.] However, the creditor may not seek a deficiency judgment. [Citation.] Thus, the antideficiency statutes in part 'serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies.' " (*Rothwell, supra*, 10 Cal.4th at p. 1236.)

---

[5] As previously noted, section 580b is inapplicable to the instant case as Lobel did not obtain purchase money from Sea-Breeze.

█ "[S]ection 580d was enacted to put judicial enforcement on a parity with private enforcement. This result could be accomplished by giving the debtor a right to redeem after a sale under the power. . . . By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected." (*Roseleaf, supra,* 59 Cal.2d at pp. 43–44.)

"The antideficiency statutes are to be construed liberally to effectuate the legislative purposes underlying them, including the policies ' "(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if [debtors] lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor." ' " (*Graves, supra,* 51 Cal.App.4th at p. 611, fn. 3.) Section 580d should be interpreted to avoid the "thwarting" of its purposes "by a subterfuge . . . ." (*Freedland v. Greco* (1955) 45 Cal.2d 462, 468 [289 P.2d 463].)

*The "Sold-out" Junior Lienholder*

The foregoing black letter law is usually easy to apply to a single creditor with a single promissory note secured by a single deed of trust. But what about circumstances in which multiple loans have been secured by multiple deeds of trust referencing the same real property?

█ Clearly, a junior lienor that forecloses its own lien by the power of sale in its deed of trust is barred by section 580d from obtaining a deficiency judgment. "Section 580d unequivocally provides that where real property has been sold under power of sale contained in a deed of trust, no judgment may be rendered for any deficiency on the underlying promissory note." (*Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 5 [224 Cal.Rptr. 301]; see *In re Marriage of Oropallo, supra,* 68 Cal.App.4th at pp. 1006–1007 [same rule applies when creditor, who has multiple deeds of trust securing a single note, conducts nonjudicial foreclosure on some but not all properties].)

Less clear is how the antideficiency laws should be applied to a junior lienor when a senior lienor conducts a nonjudicial foreclosure. "The term 'sold-out junior lienor' refers to the situation in which a *senior* lienholder forecloses its lien, eliminating the junior lienor's security interest." (*Graves, supra,* 51 Cal.App.4th at p. 611, italics added.)

In *Roseleaf, supra,* 59 Cal.2d 35, our Supreme Court addressed the question of whether antideficiency statutes affect the rights of a sold-out junior lienor. The sold-out junior lienholder in the *Roseleaf* case was not a financial institution involved in the business of providing secured loans. Instead, the seller of a hotel (Roseleaf Corporation) accepted as partial consideration (from the buyer of the hotel) three promissory notes secured by second trust deeds on three real properties that were not part of the sale transaction. (*Id.* at p. 38.) Roseleaf Corporation's second trust deeds were rendered valueless at the senior trustees' sales and Roseleaf Corporation brought an "action to recover the full amount unpaid on the three notes secured by the second trust deeds." (*Ibid.*) After the trial court entered judgment for Roseleaf Corporation, the defendant claimed on appeal that the various antideficiency statutes precluded this result.

■ *Roseleaf* held that none of the antideficiency statutes prevent a sold-out junior lienor from suing the borrower for the amount owed on a junior promissory note. (*Roseleaf, supra,* 59 Cal.2d at pp. 39–44.) Because the value of Roseleaf Corporation's security had been lost entirely at the senior trustees' sales, the one form of action rule did not preclude a lawsuit on the notes. (*Id.* at p. 39; see *Brown v. Jensen* (1953) 41 Cal.2d 193, 196 [259 P.2d 425] [this "rule has been applied in favor of a second mortgagee, the security being considered lost or valueless as to him, where a first mortgagee forecloses his mortgage and the property is sold for no more than the senior debt and a deed has been given"].) "The fair-value limitations of sections 580a and 726 likewise do not apply to a junior lienor, such as Roseleaf . . . ." (*Roseleaf,* at p. 39.)[6]

■ As to section 580d, its text does not explicitly contemplate the existence of multiple liens on a single real property or the possibility of a sold-out junior lienor. Section 580d currently[7] states: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust . . . upon real property . . . executed in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust." As interpreted by *Roseleaf,* section 580d refers to a singular note, a

---

[6] Subsequent appellate cases have limited this rule to junior lienors that do not purchase the real property at the senior trustee's sale. A junior lienor that purchases the property at the senior trustee's sale may also recover a deficiency judgment, but section 580a applies "to limit the amount of the deficiency judgment recoverable by the purchasing junior" to "the lesser of the excess of the combined debts of the senior and junior lienholders over 1) the fair market value of the property or 2) the selling price at the foreclosure sale." (*Walter E. Heller Western, Inc. v. Bloxham* (1985) 176 Cal.App.3d 266, 273 [221 Cal.Rptr. 425]; see *Citrus State Bank v. McKendrick* (1989) 215 Cal.App.3d 941, 948–950 [263 Cal.Rptr. 781] [junior creditor that purchases at senior's foreclosure sale is also subject to § 580a's three-month time limit on deficiency action].)

[7] The phrasing of section 580d was slightly different at the time of the *Roseleaf* decision, but subsequent changes do not affect the analysis in *Roseleaf.*

singular deed of trust, and a singular trustee selling the real property at issue under power of sale. (See *Roseleaf, supra,* 59 Cal.2d at p. 43 [text of § 580d "refers to the instrument securing the note sued upon" and "does not appear to extend to a junior lienor whose security has been sold out in a senior sale"]; see also *Bargioni v. Hill* (1963) 59 Cal.2d 121, 122 [28 Cal.Rptr. 321, 378 P.2d 593] [§ 580d "bars recovery only on a note secured by a trust deed or mortgage that has been rendered valueless by a sale under a power of sale contained in the trust deed or mortgage securing the note sued upon"].) Because section 580d is inapplicable, a sold-out junior lienor may pursue its only available remedy of suing directly on the debtor's breach of a now unsecured junior promissory note. (*Roseleaf,* at pp. 43–44; *Bargioni,* at p. 122.)

Going beyond its textual analysis, *Roseleaf* also explicated several policy explanations for its holding. "The purpose of achieving a parity of remedies would not be served by applying section 580d against a nonselling junior lienor. Even without the section the junior has fewer rights after a senior private sale than after a senior judicial sale. He may redeem from a senior judicial sale [citation], or he may obtain a deficiency judgment. [Citations.] After a senior private sale, the junior has no right to redeem. This disparity of rights would be aggravated were he also denied a right to a deficiency judgment by section 580d. There is no purpose in denying the junior his single remedy after a senior private sale while leaving him with two alternative remedies after a senior judicial sale. *The junior's right to recover should not be controlled by the whim of the senior, and there is no reason to extend the language of section 580d to reach that result."* (*Roseleaf, supra,* 59 Cal.2d at p. 44, italics added.)

In the course of describing policy reasons why the fair market value limitations of sections 726 and 580a should not apply to a junior lienor seeking a deficiency judgment, *Roseleaf* added: "The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior

lienor who, unlike the selling senior, might otherwise end up with nothing." (*Roseleaf, supra,* 59 Cal.2d at p. 41.)[8]

A subsequent appellate court applied the sold-out junior lienholder rule to a home equity line-of-credit lender, even though the lender intentionally delayed its scheduled trustee's sale to allow the senior lienor (Federal Home Loan Mortgage Corporation—i.e., "Freddie Mac") to conduct its nonjudicial foreclosure. (*Graves, supra,* 51 Cal.App.4th at pp. 610, 613–616.) The junior lienholder did not violate the one form of action rule or section 580d by suing on its promissory note for damages rather than proceeding with its own foreclosure on the real property. (*Graves,* at pp. 613–616.) *Graves* rejected an argument that the junior lienor had destroyed its own security by delaying its trustee's sale in favor of allowing the senior trustee's sale to extinguish the junior lien. (*Id.* at pp. 613–614.)

*Junior Lienholders Who Are Not Really "Sold Out"*

■ A single creditor that, at the time of foreclosure, has both a senior and junior lien on the same real property cannot conduct a nonjudicial foreclosure on the senior lien, then pursue a deficiency judgment as a sold-out junior lienor. (*Mitchell, supra,* 204 Cal.App.4th at pp. 1206–1208; *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1422 [92 Cal.Rptr.2d 577] (*Ostayan*); *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 551–552 [33 Cal.Rptr.2d 646] (*Evans*); *Simon, supra,* 4 Cal.App.4th at pp. 74–78; see *Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 409 [126 Cal.Rptr. 549] (conc. opn. of Elkington, J.).)

In *Simon, supra,* 4 Cal.App.4th 63, Bank of America NT & SA (Bank) loaned the Simons $1,575,000. The loan was split into two: (1) a $1.2 million senior note, with accompanying senior deed of trust and (2) a $375,000 junior note, with accompanying junior deed of trust. (*Id.* at p. 66.) Two years later, the Simons defaulted on the senior note and Bank conducted a trustee's sale "under the power of sale conferred by the senior lien." (*Ibid.*) Bank "purchased the Simon residence for a credit bid of $1,050,000, later selling the property to a third party for $1,025,000." (*Ibid.*) Bank then sued the Simons for $319,591, the amount claimed due on the junior note. (*Ibid.*) The trial court, relying on *Roseleaf, supra,* 59 Cal.2d 35, overruled the Simons' demurrer to relevant causes of action, which was based on an argument that the deficiency action was untimely under the applicable version of section 580a. (*Simon,* at pp. 67, 70–71.)

---

[8] It may have been accurate under the facts of *Roseleaf* to suggest that the junior lienor was not in a better position than the debtor to invest additional funds to buy the secured property at the senior lienor's nonjudicial foreclosure sale. Query whether, in the modern real estate finance market, most junior lienors are in a better position than a defaulting borrower to invest additional funds to protect their security should they choose to do so.

The appellate court asked the parties to address a different question in the writ proceedings that followed: "May a creditor, making two successive loans to a debtor on the security of the same real property, obtain title thereto by nonjudicial foreclosure under the power of sale of a senior lien and, having thus eliminated the security for its junior lien, recover *any* deficiency due on the obligation the junior lien secured?" (*Simon, supra,* 4 Cal.App.4th at p. 67.) The *Simon* court concluded such a creditor cannot recover a deficiency judgment because section 580d prevents this outcome.

According to *Simon,* the holding of *Roseleaf, supra,* 59 Cal.2d 35, was contingent on the fact that the various lienors were distinct parties. The policy reasons for the creation of the sold-out junior lienholder rule in *Roseleaf* simply did not exist in *Simon* because the senior and junior lienors were the same entity: "Bank was not a third party sold-out junior lienholder as was the case in *Roseleaf.* As the holder of both the first and second liens, Bank was fully able to protect its secured position. It was not required to protect its junior lien from its own foreclosure of the senior lien by the investment of additional funds. Its position of dual lienholder eliminated any possibility that Bank, after foreclosure and sale of the liened property under its first lien, might end up with no interest in the secured property, the principal rationale of the court's decision in *Roseleaf.*" (*Simon, supra,* 4 Cal.App.4th at p. 72.) Allowing the same lender to both (1) obtain the security without a right of redemption afforded to borrower and (2) obtain a deficiency judgment, would undermine the purpose of section 580d—to place judicial and nonjudicial foreclosure in parity. (*Simon,* at p. 76.)

The *Simon* court also suggested, in the absence of its holding, lenders would intentionally thwart the purposes of section 580d: "We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d." (*Simon, supra,* 4 Cal.App.4th at p. 77.) But according to *Simon,* its rule must apply regardless of whether thwarting section 580d was a motivating factor behind the structure of the particular loans at issue: "Assuming, arguendo, legitimate reasons do exist to divide a loan to a debtor into multiple notes thus secured, section 580d must nonetheless be viewed as controlling where, as here, the senior and junior lenders and lienors are identical and those liens are placed on the same real property." (*Simon,* at p. 78.)

In expressing agreement with the *Simon* rule, *Evans, supra,* 28 Cal.App.4th at pages 551–552, and *Ostayan, supra,* 77 Cal.App.4th at pages 1421–1422, also focused on fairness and policy considerations. The "right to recover on [the] junior note [is] not controlled by the whim of a senior lienholder; it [is such a creditor's] own choice to proceed by nonjudicial foreclosure of the

senior lien which it also own[s]. [Citation.] In other words, a creditor holding two successive trust deed liens cannot properly characterize itself a sold out junior lienholder by foreclosing on the senior lien. [Citation.] To hold otherwise would frustrate the fundamental public policy underlying . . . section 580d." (*Ostayan*, at p. 1422.)

 Recently, the Second Appellate District extended the *Simon* rule to situations in which a single lender assigns the junior lien *after* the senior trustee's sale: "Here, [borrower] executed two promissory notes, for $252,000 and $63,000, secured by the first and second deeds of trust in the property. As in *Simon*, the first and second deeds of trust were held by a single lender, GreenPoint. GreenPoint, as beneficiary under the first deed of trust, chose to exercise its power of sale by holding a nonjudicial foreclosure sale. GreenPoint thus was not a 'sold-out junior' lienor and would not have been permitted to obtain a deficiency judgment against [borrower] under the rule articulated in *Simon*. The result is no different because GreenPoint, *after the trustee sale*, assigned the second deed of trust to the Bank. 'An assignment transfers the interest of the assignor to the assignee. Thereafter, " '[t]he assignee "stands in the shoes" of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment.' " [Citation.]' [Citation.] Accordingly, because GreenPoint could not have obtained a deficiency judgment against [borrower], the [assignee] Bank also is precluded from doing so." (*Mitchell, supra*, 204 Cal.App.4th at p. 1207 [also rejecting argument that *Simon* only applies if bank, rather than third party bidder, obtains property at foreclosure sale with credit bid].)

*Analysis and Conclusion*

Lobel advocates for a further expansion of the interpretation of section 580d put forth by *Simon, supra*, 4 Cal.App.4th 63. According to Lobel, we should assess the status of a junior lienor by applying section 580d (as interpreted by *Simon*) at the moment of loan creation rather than the time of the senior trustee's sale. Thus, assignment of junior liens at any time in the secondary mortgage market would be ineffectual in changing the section 580d consequences that have attached to multiple loans so created. The trial court agreed with this analysis.

 We conclude the trial court's judgment must be reversed. In the case before us, the junior lienor and senior lienor were different entities at the time of the senior trustee's sale. There is no suggestion in the record that the loan originator (Sea-Breeze) and any of the various assignees of the senior and junior loans were affiliated in any way or conspired in any way to evade the antideficiency laws. Sea-Breeze provided both loans to Lobel at the same

time, but soon thereafter assigned the junior loan (and accompanying deed of trust) to a third party and ultimately assigned the senior loan to yet another entity. The factual circumstances do not suggest two loans were created (when one would have sufficed) as an artifice to evade section 580d. The facts of this case do not justify a further expansion of section 580d. Cadlerock is not precluded by sections 580d, 726, or any of the cases applying these rules, from suing Lobel for the amount due on the junior loan.

■ We reject the proposition that the moment of loan origination is determinative for purposes of applying the one form of action rule or section 580d. (*Woods, supra,* 94 Cal.App.4th at pp. 1235–1236 [in context of rejecting one form of action defense to junior's suit on the junior note following a judicial foreclosure by senior, court observed that its "review has not disclosed any case where the California courts have treated related loans assigned to different parties as if the originating creditor still held them"].) There is no principled distinction to be made between (1) this case (a piggyback transaction with a single lender in which the junior lien is immediately assigned to a third party) and (2) a two-lender piggyback transaction in which two loans are made contemporaneously by two separate lenders, each maintaining ownership of their respective loans until the senior lien is nonjudicially foreclosed (a hypothetical scenario that clearly would fall under *Roseleaf, supra,* 59 Cal.2d 35). Applying different rules of law to junior liens originated under these two scenarios would elevate form over substance by, in cases like the one here, treating two separate loans as a single loan based on the happenstance of the two loans having been originated by the same lender. Ironically, this result would be predicated on judicial attempts to prevent lenders from avoiding the substance of the antideficiency statutes by artificially dividing a single loan into the form of two loans.

Having decided the case before us, we could end our opinion here. But our review of the relevant case law on this topic compels us to make several additional observations on the subject of the interpretation of section 580d.

Section 580d does not refer to or contemplate multiple notes secured by multiple deeds of trust on the same real property. "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust . . . upon real property . . . executed in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust." (*Ibid.*)[9] According to our Supreme Court's textual analysis, section 580d "does not appear to extend to a junior lienor whose security has been

---

[9] "In enacting section 580d the Legislature obviously had in mind the two-party transaction between the creditor whose loan is secured by a deed of trust or mortgage and the debtor who gave that security for the loan to him." (*Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40, 43

sold out in a senior sale." (*Roseleaf, supra,* 59 Cal.2d at p. 43.) It is true that *Roseleaf* rooted its holding in a lengthy analysis of the policies underlying the various antideficiency statutes (§§ 580a, 580b, 580d, 726). But *Roseleaf* did not ignore the text of section 580d in favor of free-ranging judicial policy making.

*Freedland v. Greco, supra,* 45 Cal.2d 462, which was explicitly cited by the trial court, does not authorize courts to ignore the text of section 580d in favor of vindicating its underlying purposes. In *Freedland,* the lenders obtained two promissory notes from the borrower, each in the amount of $7,000, even though it was undisputed there was a single $7,000 obligation. (*Freedland,* at p. 464.) The first note was secured by personal property and the second note was secured by real property. (*Ibid.*) The lenders conducted a nonjudicial foreclosure on the real property security and then sued for a deficiency judgment (along with a judicial foreclosure of the personal property). (*Id.* at pp. 464–465.) Because it was "clear" under section 580d that the lenders could not obtain a deficiency judgment had there been a single note, it was equally clear the lenders could not defeat this result by using a false, duplicative note. (*Freedland,* at pp. 465–467 ["It is unreasonable to say the Legislature intended that section 580d could be circumvented by such a manifestly evasive device."].) There was only one obligation in *Freedland* (and therefore only one "note"). *Freedland* might apply in circumstances where the factual record supports a conclusion that one loan was disguised as two loans for purposes of evading section 580d. *Freedland* does not authorize transmogrifying two legitimately separate obligations into a single note pursuant to a judicially created prophylactic rule.

Conspicuously absent from *Simon, supra,* 4 Cal.App.4th 63 (and cases endorsing its reasoning) is a close examination of the text of section 580d. In formulating its opinion, *Simon* extensively relied on a concurring opinion by Justice Elkington in *Union Bank v. Wendland, supra,* 54 Cal.App.3d 393. In discussing the application of section 580d, that opinion manifests what we think is a misreading of *Roseleaf:* "Nor do I believe that the lender bank, in the context of this case, should be equated with a third party who might make a loan taking as security a second deed of trust on the same real property. It is true that when the security of a second deed of trust is rendered valueless by a prior foreclosure, through no fault or action of the second lender [citation], that lender *for equitable reasons* will ordinarily be permitted an action against the debtor on the second obligation." (*Union Bank,* at p. 410 (conc. opn. of Elkington, J.), italics added; see *Evans, supra,* 28 Cal.App.4th at p. 551 ["Thus, equitable reasons permit sold-out juniors to pursue an action against the debtor on the junior obligation . . . ."].)

[71 Cal.Rptr. 64] [interpreting § 580d in context of its effect on ability of lender to pursue guarantor following trustee's sale].)

■ At least with regard to section 580d, no resort to equity is necessary. Section 580d simply does not apply on its face to a junior lien. *Roseleaf, supra,* 59 Cal.2d 35, did not create an equitable "exception" to section 580d for sold-out junior lienholders. Instead, it interpreted section 580d and found it to be inapplicable to sold-out junior lienholders. It is *Simon, supra,* 4 Cal.App.4th 63, and its progeny, that have created an equitable exception to the text of section 580d. In essence, these cases have inserted an additional clause into section 580d: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust . . . upon real property . . . executed in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust," *or upon any other note secured by a junior deed of trust upon the same real property, when the beneficiary for whom the trustee's sale is conducted is also the owner of the additional note or notes.* ■ But " ' "a court is not authorized to insert qualifying provisions not included [in a statute] and may not rewrite the statute to conform to an assumed intention which does not appear from its language." ' " (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381].)

In our view, courts purporting to interpret section 580d have conflated the analysis of section 580d with the one form of action rule. Under section 726, subdivision (a), a secured creditor is generally required to pursue its security, not the underlying obligation. Arguably, a creditor that owns both the senior and junior lien might be deemed to have rendered the junior lien valueless by its own actions when it conducts a nonjudicial foreclosure on the senior lien. (See *Union Bank v. Wendland, supra,* 54 Cal.App.3d at p. 409 (conc. opn. of Elkington, J.) [noting that "the security . . . had been rendered valueless by the lender's own act"].) Perhaps *Simon* and its progeny have come to the right result under the one form of action rule, assuming that it is a proper sanction for a violation of section 726 under these circumstances to bar the junior lienor from obtaining *any* recovery. Whether these cases were correctly decided (either under § 580d or § 726) is a question we need not definitively answer in the case before us.[10] As discussed above, even if *Simon* is correct, its holding and rationale do not encompass the loans provided to Lobel.

---

[10] Assuming *Simon, supra,* 4 Cal.App.4th 63, was correctly decided, *Mitchell, supra,* 204 Cal.App.4th 1199, rightly extended *Simon* to factual scenarios in which the lender assigns the junior loan *after* the senior trustee's sale. The *Mitchell* court sensibly concluded that any applicable consequences of the senior trustee's sale have attached to the junior loan/lien at the time the power of sale under the deed of trust is exercised, and that any subsequent assignment of the junior loan/lien must be subject to a borrower's applicable defenses. We recognize that difficult hypothetical cases may arise halfway between the facts of *Mitchell* and the instant case. To wit: What if Sea-Breeze had not immediately sold the junior lien, but had instead sold the junior lien after Lobel defaulted but before the senior trustee's sale? Perhaps the policy concerns identified in *Simon* justify establishing the date of default (rather than the date of the

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its orders on the cross-motions for summary judgment, and to enter new orders granting Cadlerock's motion and denying Lobel's motion. Cadlerock shall recover costs incurred on appeal.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.

On June 21, 2012, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 10, 2012, S204372.

---

trustee's sale) as the triggering event for purposes of determining the junior lienor's rights under section 580d or section 726.